Perkins *et al. v.* Hayward *et al.*

Filed June 21, 1890.

---

No. 13,321.

## PERKINS ET AL. *v.* HAYWARD ET AL.

SPECIAL JUDGE.—*Adjournment of Term.—Power to Continue Trial Beyond.—* Where a special judge is appointed to try a cause, and after the trial is commenced, the regular judge adjourns the term until the time fixed by law for holding the next regular term, the special judge has authority to proceed with the trial of the cause before him, after the order of adjournment made by the regular judge.

SAME.—*Extent of His Authority.—*When the regular judge yields the bench, calls in a special judge, and duly appoints him to try a designated cause, the special judge thus appointed, acquires full authority over the cause, throughout all of its stages, and the authority of the regular judge is necessarily excluded. Under the provisions of section 10 of article 7 of the Constitution, the Legislature has the power to provide for the appointment of special judges, and to make provision for investing such special judges with the authority of regularly chosen judges in the cases enumerated. *Batten* v. *State,* 80 Ind. 394, distinguished.

EVIDENCE.—*Part of not in Record.—Effect of as to Evidence Objected to.—* Where all the evidence is not in the record, all reasonable intendments will be indulged in favor of the ruling of the trial court as to the admission of evidence. Under such circumstances, if the evidence objected to would have been admissible under any possible contingency, the Supreme Court will not hold that available error has been committed.

Perkins *et al. v.* Hayward *et al.*

SPECIAL FINDING.—*What it Must Contain.*—A special finding must find the facts, and state neither conclusions of law nor mere matters of evidence. The ultimate facts only must be stated.

SAME.—*Ditch Proceeding.*—*Statements as to Public Health and Public Highways.* —The statement in a special finding in a ditch proceeding that the ditch would benefit the public health, is the statement of an ultimate fact, and not of a mere conclusion. The statement that it would benefit several public highways in Steuben and La Grange counties, is the statement of an ultimate fact, and not of a mere conclusion, but is probably so vague and indefinite as to be objectionable.

DRAINAGE.—*Establishment of Ditch.*—*What Must be Shown.*—The statute providing for the establishment of a ditch, does not require that a proposed ditch shall be of public utility, benefit highways and promote public health, for if it will accomplish any one of these things, the petitioners have a right to have it established, and if its construction will specially benefit lands in the vicinity, the cost of constructing it may be assessed against the lands.

From the La Grange Circuit Court.

*J. H. Baker* and *J. H. Defrees, Jr.,* for appellants.
*J. Morris, J. S. Drake* and *F. D. Merritt,* for appellees.

ELLIOTT, J.—This appeal is prosecuted from a judgment establishing a ditch and assessing benefits upon the lands of the appellants.

A change of judges was secured upon due application, and Joseph B. Wade, Esq'r, was appointed a special judge to try the cause. The trial was entered upon before him as such judge on the third day of the September term of the court. On the fourth and last week of the term the regular judge adjourned the term until the time fixed by law for holding the next regular term. The special judge proceeded with the trial of the cause after the order of adjournment made by the duly elected judge, and the appellants seasonably objected. It is here contended that the special judge had no authority to proceed with the trial after the order of adjournment.

It is quite clear that under the provisions of the act of 1885, Elliott's Supp., section 284, the regular judge, had he been presiding, might have continued the trial beyond the

term, and under the provisions of section 415, R. S. 1881, a special judge has substantially the same power as a regular judge in so far as concerns the cause he is appointed to hear and determine. *Beitman* v. *Hopkins,* 109 Ind. 177 ; *Staser* v. *Hogan,* 120 Ind. 207 (224) ; *Wilson* v. *Piper,* 77 Ind. 437 (440). In *Lerch* v. *Emmett,* 44 Ind. 331, it was said, in speaking of a judge *pro tempore,* that he has " all the power of the regular judge."

When the regular judge yields the bench, calls in a special judge, and duly appoints him to try a designated cause, the special judge thus appointed acquires full authority over the cause throughout all of its stages, and the authority of the regular judge is necessarily excluded. In this instance the regular judge could in no wise rightfully control or interfere with the proceedings of the special judge, for the latter was the sole and exclusive judge in the cause. He did not share power with the regular judge, for the authority of that judge was effectively excluded so far as concerned the particular case, and he could make no order affecting that case. It was for the special judge to determine whether the trial should continue until the end was reached, and this was not only his right but it was his duty under the law, for it is declared by the statute that the special judge " shall have power to hear and determine said cause until the same is finally disposed of." In our opinion the particular case where there is a special judge called in, with all its incidents from the beginning to the end, passes under the exclusive control and jurisdiction of the special judge, subject to revert to the control of the regular judge in the event that the special judge becomes incapacitated or refuses to act.

We think it quite clear that under the provisions of section 10 of article 7 of the Constitution, the Legislature has the power to provide for the appointment of special judges, and to make provision for investing such special judges with the authority of regularly chosen judges in the cases enumerated. The provisions of the Constitution are very com-

prehensive, and there can, as we conceive, be no question as to the legislative power to authorize the appointment of special judges, and to provide that their authority shall, in the cases specified, be of the same general extent and character as that of the regularly elected and qualified judge.

In this instance the special judge did not fix a term of court; he did no more than continue a trial regularly entered upon at a term fixed by law. The decision in *Batten* v. *State*, 80 Ind. 394, is, therefore, not relevant to the question as this record presents it.

The appellants did not object to the trial of the case by the special judge, but their objection was made against the continuance of the trial, so that the only question presented is as to the power of the special judge to continue the case beyond the time fixed for the duration of the regular term of court. We can not believe that the Legislature intended that it should be left to the pleasure of parties who enter upon a trial before a special judge to control the question of the continuance of the trial; but, on the contrary, we are satisfied that the Legislature intended that the question should be decided by the special judge, and for that purpose invested him with substantially the same power as the regular judge. It is easy to perceive what disastrous consequences might flow from a doctrine denying a special judge the power to continue a trial until a final result was reached, and we are convinced that it was not intended that such a doctrine should prevail.

A special bill of exceptions contains a part, but only a part, of the testimony of John Price, one of the witnesses called by the appellees. It appears from the bill that an interrogatory reading thus: "You may state what, in your judgment, are the actual benefits to all the lands likely to be benefited by the construction of the proposed drain." was asked the witness, and that he was permitted to answer it. As we have indicated, the evidence is not all in the record, nor does it appear whether the question was asked

on the original examination or on the re-examination. As to these matters and as to what the cross-examination drew out, or what rulings were made during the cross-examination, the record imparts no information. In this condition of the record it can not be adjudged that it affirmatively appears that the trial court committed an error in admitting this testimony. This would be true even if it be conceded that if no evidence had been elicited by the appellants making it competent the testimony of Price would have been inadmissible. It has been often decided that a party by calling out incompetent evidence may preclude himself from successfully objecting to evidence of like character introduced by his adversary. The rule upon this subject is that evidence otherwise incompetent may be practically stripped of its objectionable character by the course pursued by the party who challenges its competency. If a party opens the door for the admission of incompetent evidence he is in no plight to complain that his adversary followed through the door thus opened. *Lowe* v. *Ryan,* 94 Ind. 450; *Meranda* v. *Spurlin,* 100 Ind. 380; *Hinton* v. *Whittaker,* 101 Ind. 344; *Dinwiddie* v. *State,* 103 Ind. 101; *Hobbs* v. *Board, etc.,* 116 Ind. 376; *Nitche* v. *Earle,* 117 Ind. 270; *Mosier* v. *Stoll,* 119 Ind. 244 (251). As the question comes to us we can not say that the appellants did not, on cross-examination, introduce evidence of the same character as that which they now seek to make available for a reversal of this judgment. Nor can we presume that there was nothing done making the evidence competent without a departure from settled and familiar principles. It is, and long has been, a settled rule that all reasonable intendments will be indulged in favor of the ruling of the trial court. So, too, it is well settled that a party who seeks to overthrow the judgment of a court must affirmatively show an erroneous ruling and that it was prejudicial to him. It is evident that, under these settled rules, the appellants can not successfully de-

mand a reversal of the judgment upon the ground that there was error in admitting the testimony to which we have referred, for it does not affirmatively appear that there was error of which they can take advantage, nor is the presumption which we are bound to yield to the rulings of the trial court overthrown. We do not decide whether the evidence was or was not *per se* incompetent; we decide that the record does not show that the appellants are in a situation to successfully make any question upon its intrinsic character.

The special finding of facts, in so far as it is material and relevant to the contest here waged, is as follows:

"*First.* That the said drain will be of public utility.

"*Second.* That it will benefit several public highways in Steuben and La Grange counties.

"*Third.* That the said drainage will benefit and promote the public health."

The contention of the appellants' counsel is that the statements contained in the special finding are mere conclusions of law, and not the statements of facts. The question is presented by a motion for a *venire de novo,* and while it is true that the phrase "*venire de novo*" is not strictly an accurate one as applied to the finding of the court, yet it is a convenient term, and usage has sanctioned its employment in cases where, as here, parties desire to present objections to a special finding made by the court. Thus regarding the appellants' motion, it must be held effectual to present objections apparent upon the face of the special finding. If, therefore, such defects appear upon the face of the special finding as would lead to the condemnation of a special verdict in a like case, our judgment must be in favor of the appellants.

It is well settled that a special verdict must find the facts and state neither conclusions of law nor mere matters of evidence, and, as we have seen, what is true of a special verdict is true of a special finding. If, as appellants' counsel con-

tend in an unusually able and vigorous argument, it be true that the special finding in this instance states only conclusions, and not facts, the motion for a *venire de novo* must prevail, and the finding go down before it. *Dixon* v. *Duke,* 85 Ind. 434; *Vinton* v. *Baldwin,* 95 Ind. 433; *Pittsburgh, etc., R. R. Co.* v. *Spencer,* 98 Ind. 186; *Indianapolis, etc., R. W. Co.* v. *Bush,* 101 Ind. 582; *Louisville, etc., R. W. Co.* v. *Balch,* 105 Ind. 93; *Pittsburgh, etc., R. W. Co.* v. *Adams,* 105 Ind. 151; *Conner* v. *Citizens St. R. W. Co.,* 105 Ind. 62; *Sohn* v. *Cambern,* 106 Ind. 302; *Louisville, etc., R. W. Co.* v. *Frawley,* 110 Ind. 18.

It is the office of a special verdict to find the inferential facts, not mere evidentiary facts. *Locke* v. *Merchants Nat'l Bank,* 66 Ind. 353; *Smith* v. *Goodwin,* 86 Ind. 300; *Blizzard* v. *Riley,* 83 Ind. 300; *Bennett* v. *Meehan,* 83 Ind. 566; *Hagaman* v. *Moore,* 84 Ind. 496; *Cottrell* v. *Nixon,* 109 Ind. 378; *Zigler* v. *Menges,* 121 Ind. 99; *Seward* v. *Jackson,* 8 Cowen, 406; *Frombois* v. *Jackson,* 8 Cowen, 589; *Langley* v. *Warner,* 3 N. Y. 327; *State* v. *Watts,* 10 Iredell L. (N. C.) 369; *Blake* v. *Davis,* 20 Ohio, 231.

The ultimate facts must be stated, and not the evidence by which they are established. It is obvious, therefore, that the precise question here is, whether the finding states only conclusions, for it is very clear that it does not state matters of evidence. If it be faulty at all it is because it is too narrow, not because it is too broad.

In giving effect to this finding it is important to bear in mind the rule that the finding must state only the ultimate facts, for this rule restricts and limits the office of a special finding. If the court has stated the ultimate facts the finding is not ill, and the appeal must fail.

One of the most perplexing questions in the wide range of the law is whether a statement embodies a mere conclusion or contains a recital of an ultimate fact. The line between conclusions and ultimate facts is so shadowy and indistinct that it is often almost impossible to discover and follow

it. In this instance we have concluded, after most careful study and reflection, that there are at least two inferential facts stated in the special finding before us. It seems clear that the statement that public highways in La Grange and Steuben counties will be benefited by the ditch is the statement of an ultimate fact, and not of a mere conclusion, but it is probably so vague and indefinite as to be objectionable. We conclude, upon the authorities and upon principle, that the statement that the ditch will benefit the public health is not the statement of a mere conclusion, but is the statement of an inferential fact. In *Bass* v. *Elliott,* 105 Ind. 517, a statement similar to that under immediate mention was treated as a fact. A similar statement was assigned a like effect in *Blizzard* v. *Riley, supra,* and that case has been often approved. *Zigler* v. *Menges, supra.* In the case of *East Saginaw, etc., R. R. Co.* v. *Benham,* 28 Mich. 459, it was held that a finding that "it is necessary to take the land for a public use" is sufficient.

On principle, the finding that the ditch will benefit and promote the public health is the finding of an ultimate fact and not the statement of a mere conclusion. This must be true, for no matter what else might be stated, whether the ditch would benefit the public health would be at last a matter of inference. No matter what part of the facts exhibited in the evidence might be incorporated in the special finding it could not be determined except by an inferential process what effect the opening of the ditch would have upon the public health. If a finding should be taken up for consideration in which there was no statement of the effect upon the public health, there could be no conclusion upon that question except by inference. It must, therefore, be true that in such a case as this the ultimate and inferential fact is that the ditch will benefit and promote the public health, since that fact can only be deduced by inference. In no other possible way can such a conclusion be reached.

It is settled that a witness may state that a proposed ditch

will be conducive to the public health, and this doctrine is, in part, at least, sustained by the principle that such a statement is one of fact. *Bennett* v. *Meehan, supra; Yost* v. *Conroy,* 92 Ind. 464 (471) ; *Boyle* v. *State,* 105 Ind. 469 (472). The statement in such a case is but the statement of a conclusion from observed facts, and is, in truth, no more than the statement of the ultimate fact deduced from evidentiary facts. Each case must, in a great measure, depend upon its own characteristics and peculiarities, and in such a case as this it is not possible to do more than state the ultimate conclusion of fact, for no more can be done without violating the rule forbidding the statement of evidentiary facts, so that of necessity all that can be done is to declare the conclusion of fact. Unlike many cases there is here no standard by which it can be determined as matter of law whether a ditch will promote the public health, and that fact must, therefore, be stated as the ultimate one.

The rule we sanction is the only practicable one, for, no matter what may be stated, the court can not, unless the ultimate fact is stated, declare as matter of law that the proposed ditch would promote the public health, and the fact that it will do so must, it is evident, be stated not as matter of law, but as a matter of fact. If it can not be stated as a matter of law, then it can by no possibility be regarded as anything else than an ultimate fact, to be found and stated by the triers of the facts, and not by the judges of the law. If it does not appear on the face of the special verdict that the ditch will be conducive to the public health, then no conclusion can be drawn, since the court can look only to the verdict for the facts. This is so because there is no standard by which it can be determined as a pure matter of law that the ditch will promote the public health, and this is a marked and peculiar feature of the case, impressing upon it an unique character.

Conceding that the findings upon the question of utility and upon the question of benefit to public highways are in-

sufficient, still, the finding upon the question of benefit to the public health is sufficient to sustain the special finding against the attack made upon it. The promotion of the public health impresses a public character upon the work, and invokes the exercise of the governmental power under which ditches may be ordered. *Zigler* v. *Menges, supra.* The benefit to private property resulting from the construction of the ditch authorized the special assessment which was levied upon the lands in the vicinity of the ditch.

The statute under which these proceedings were conducted does not require that a proposed ditch shall be of public utility, benefit highways and promote public health, for, if it will accomplish any one of these things, the petitioners have a right to have it established, and if its construction will specially benefit lands in the vicinity, the cost of constructing it may be assessed against the lands.

We have examined all the questions properly presented, and, finding no available error, affirm the judgment.

MITCHELL, J., took no part in the decision of this case.

